The next case on the calendar is United States v. Jones. Good morning, your honors. This is Kenneth Caruso. I represent the defendant Stephen Jones by appointment of the court under the Criminal Justice Act. Your honors, the conduct that Congress had not outlawed played a major role in the trial of this case. The conduct in question is sex trafficking by advertising, which had not been outlawed at the time of the conduct at issue in this prosecution. The conviction, therefore, was erroneous on two grounds. One, there was a constructive amendment of the indictment, and two, the conviction may rest on an invalid legal theory or an unconstitutional legal theory. With respect to the constructive amendment, an element of the crime was amended or added. The indictment charged, consistent with the law pre-2015, that the defendant engaged in sex trafficking by recruiting, harboring, transporting, etc. It did not charge sex trafficking by means of advertising, and indeed it could not have at that time. But one of the things that did provide was that it's a crime to provide victims for commercial sex acts, and is it relevant that evidence of advertising could be proof of providing? Well, I think you've got two questions in one there, your honor, and I'll try to answer both. First of all, providing and advertising simply have different meanings. They are sequential, they are verbs that connote and suggest sequential activities. First, someone advertises, and then when he finds a customer, he provides, in this case, the service, if I can put it that way. Advertising to the statute in 2015, that must have meant something. If advertising had been The core conduct is the same, is it not? And that is the trafficking of women and girls, and it was done by a number of means, including but not exclusively advertising. Isn't that so? Well, that is so, but that doesn't answer the question here. The judge instructed the jury twice by reading the incorrect, the inapplicable statute. Well, that's not, when he was reading the statute, he referred to it, but if you go back through the record, he read the indictment multiple times during his instructions, accurately read it without advertising. When he read the elements, he read it without advertising. The verdict sheet had the language of the indictment above each question, didn't have advertising in it. So, why shouldn't we conclude that if defense counsel, if the prosecutor and the judge didn't note that, you're asking us to determine that that was so significant that the jury was convicting him based upon advertising? Well, I think it was so significant because of the proof, the argument, and those instructions. I know, but Mr. Chief Justice Lansing indicated that, and Judge Chin, the proof would have come in anyway. It wouldn't have affected the proof. The proof would have come in anyway. Okay, but then the proof would have come in with an instruction that the evidence of advertising could only be considered to complete the story of the crime on charge or to show providing, and the judge would have... Mr. Cruz, I don't think that type of instruction would be necessary. Suppose you had, let me give you a hypothetical. Suppose you had an indictment that said someone possessed a kilo of cocaine with intent to distribute, right? That was what the indictment said. And the judge reading the statutory language in the beginning of his or her charge made reference to distribution and not just possessed with intent to distribute. You're saying the defendant, that's a constructive amendment in the indictment, the defendant would be entitled to a new trial because they're sequential? Well, perhaps not standing alone, but in combination with extraordinary amounts of proof, heavy reliance by the government on advertising in the summation. And then the judge reading the statute that included advertising and telling the jury, those are just alternative ways the statute would be violated. He told the jury that advertising was one of the alternative ways that statute could be violated. I repeat, the evidence here hammered on this advertising. They called a witness from Backpage as the first witness in the case. He gave a virtual tutorial on how to set up these sex trafficking ads. They put in pictures of the victims and had each from the ads, had each victim testify about that. The government argued on the conspiracy count that the placing of the cooperating witness were, quote, working together in concert. And then you had Judge Larimer tell them that advertising was an alternative way to violate the statute. I think in combination, that worked the requisite broadening of the bases for the indictment to work a constructive amendment. And I would note, by the way- Did Judge Larimer actually say advertising is another way to violate the statute? Or did he simply read the words of the statute? He read the words of the statute, and then he said, those are just alternative ways the statute would be violated. So in other words, he included advertising as a way that the statute could be violated. And that's unlawful. It doesn't meet the statutory, the conduct did not come within the statutory definition of the crime. And the conviction would be unconstitutional under the Due Process Clause, as informed by ex post facto concepts. This conduct was not a crime at the time. And I don't think that the court can safely conclude that the jury concluded otherwise that they may enter a verdict of guilt without reference to the advertising evidence, which again, I repeat, was just hammered home. Let me turn to the other issue in the case, which is the Speedy Trial Act. There are two types of errors here, procedural and substantive. And let me go straight to the substantive. I would like to leave the court with three critical facts. First of all, there was a second chair on this prosecution team. There were two assistant US attorneys assigned to this case. Mr. Gestring had been assigned to the case for seven months. There is nothing in the record denying that he was not already fully familiar with the case. And he had two more months to get ready for the trial. Nine months to get ready for trial in the absence of the lead prosecutor, I suggest is more than ample. And I think that Judge Larimer's finding about the need for continuity of counsel lacks a foundation, because he did not even ask on the record, whether Mr. Gestring could try the case. In the absence of evidence on that, I don't see that any basis for finding of continuity of counsel. The second fact I would like to leave the court with is... Well, before you get to the second fact, it was clear from the record that Ms. Marangolo had had the case from the beginning for a year and a half before Mr. Gestring. So it was clear that she had more familiarity with the case. And you want us to find that it's an abuse of discretion for a judge to, if an attorney is on maternity leave, who's had the case from the under the Speedy Trial Act in order to allow that attorney to try the case, especially where your client had twice adjourned the case when the government was ready to go. I think it's an abuse of discretion on the following combination of facts. One, there was another assistant who could have tried the case. Two, the adjournment... Hold on. Let's turn it around. Let's say it's the defense lawyer. Let's say the defense lawyer had the case for the defendant from the beginning and was on maternity leave and was going to need two months before she would be able to try the case. Should the judge say, the public has a right to a speedy trial. You have a second attorney who's been on the case. So you don't get the attorney, your defense attorney that you've had from the beginning. But that's entirely different because the defense and the government occupy different situations. The government is always ready. No, under the exclusion continuity of counsel applies to both the government and the defense, as well as effective preparation. That's what the statutory language says. I understand what you're saying, but it does not say you can't exclude the time for continuity of government counsel. It says the opposite. Of course it doesn't say that, but I think this situation is extraordinary. I have before me, and I'm happily, proudly standing in front of the panel that consists of three former assistant U.S. attorneys. How many times were you told or heard another judge tell another assistant, get me some other assistant, get somebody in here. We're going to try this case. The government is always ready. And I think it's outrageous actually to postpone this case where I'm three facts and I didn't get to the second or the third. One, without any inquiry about the ability of Mr. Gesturing to try the case, the judge made this finding. Two, there was a lengthy adjournment or continuance, four months. And three, my client was in jail. The man was in jail. So the lengthy that you said in your papers, there was 70 days left up till July 6th, right? Correct. July 6th would have been the 70th day. Correct. His lawyer was on vacation until July 14th, around July 14th. I don't, and you can tell me defense lawyers, you don't want to try the case the day after they get back from vacation. But let's assume that he was going to be ready on July 17th that Monday to try the case. We're talking about basically like seven weeks that was excluded under the Speedy Trial Act, an abuse of discretion to exclude seven weeks of time so that the government prosecutor who had the case from the beginning could try the case because she was on maternity leave. I think that the situation is so it raises eyebrows, my view about how a judge would postpone the trial of a man who's in jail. Why can't the judge take into account as he did that the defendant twice had asked for adjournments because he went to new counsel where Ms. Marangol was ready to go. There was no suggestion that my client's insistence on trial in May of the year of the trial, no insistence that was insincere. No, you missed my point. My point under the statute, under that provision, it talks about whether it was considering the exercise of due diligence is under that provision. So the judge could say the government was exercising due diligence, was ready. As you indicate, they normally say we're ready to go. They did that twice. We're ready to go. And your client is the one that wanted the adjournment, whether it's sincere or not. The point is that the government was exercising due diligence trying to give him his speedy trial. Okay. But at that time, the defendant wanted to go pro se. There was a whole episode of that and then he changed his mind. Look, there's no reason to apologize for that. I wasn't on the scene. The fact of the matter is that's not a waiver. The Speedy Trial Act has specific rules for waiver. The only conduct or omission that constitute a waiver is the failure to raise your rights before the trial. And here, my client did that. So again, I think it's such an extraordinary situation. And to say that, to your honor, to say it's only seven weeks, my calculation was slightly more than that. But that's a lot of time when you're in jail. And the situation calls for, I believe, a retrial. So let me, I did reserve some time, I suspect. That's Mr. Caruso. I think you're Thank you. Did you want to reserve the rebuttal time? I still would like a couple of minutes. Yes, I would. Sure. Two minutes rebuttal. We'll hear from the government. Good morning, your honors. Monica Richards on behalf of the appellee, United States of America. I would mimic what the court said, specifically Judge Bianco, that here we had a judge who when he was giving the instructions read verbatim from the statute, but then also read verbatim from the indictment. He read that to the jury during the charge. It's in the record with regard to count one at the government's appendix, page 92. With regard to counts two through seven at the government's appendix, page 100. Also regarding the elements, contrary to what my colleague, my opponent here, colleague said, the elements that were charged did not include the term advertising. The elements were charged, the court could take a look at the government appendix, pages 94, and then starting at 102 for counts two through seven. The wrong statute was read, or the current statute that included advertising was read twice. There was a substantial amount of focus on advertising. A lot of the proof in the trial was about advertising. So his argument is that it overrode the reading of the giving of the instructions in essence. That the jury heard from the judge's mouth that this crime could be committed by means of advertising. By statute it could, but certainly by the evidence and the proof, I'm sorry, by statute it could not. By elements that were given and by the proof, advertising certainly, there was no basis, there's no suggestion or reason that the government couldn't prove up its case by advertising. He advertised the victims and as your honor noted initially, that was a means of providing the victims. I disagree with Mr. Caruso's characterization of it being a two-step process, I think he said. When one provides the victims, they're showing them in this case on the internet through web pages and that form of advertising constitutes providing and that was a crime before the amendment and that was a crime after the amendment. I think the theory is that the jury heard the judge's reading of the statute and then was relieved of its obligation to find providing. It believed it could convict on advertising. Well respectfully your honor, there's also a bunch of words in there, there's harbor, there's entice, there's transport, and there's plenty of evidence with regard to all of that as well. So there's that, but also nobody noticed. I can see it in the black and white just as Mr. Caruso does reading it after the fact, but it was said, the word was said, advertising when reading the statute, but clearly only when reading the statute and the fact that no one heard it in real time. Does that mean this is plain error analysis? I'm not quite sure the standard of review because if it is a constructive amendment, then that's per se prejudicial. I appreciate the judge's question. I tried as best as I could in my brief to separate those two things. The constructive amendment piece is as your honor suggests, but here we don't have that because we did have notice of the core of criminality. The indictment, which is what was read to the jury and also tracked in the jury verdict sheet, which was taken into the jury room with them, the indictment provided the defendant with notice of the core of criminality to be proven at trial. And as I said, that proof wasn't any different before the amendment or after the amendment. There was nothing that required the government to curtail or limit its proof with regard to advertising when that was the core of criminality. The fact of advertising was criminal conduct before and afterwards. It just wasn't standalone. It just wasn't standalone proof. Here we had tons of other evidence. We had enticing, harboring, recruiting, and missing one. But all of those things were also means by which this statute could be violated. Is there any risk on this record that the jury could have been unanimous as to advertising and no, not as to any of the others? I don't see that as a reasonable proposition, your honor. I really don't based on this record. We had a jury that was instructed properly as to the elements that was, and we had the core criminality properly charged in the indictment. That indictment was properly read to the jury where your honor, if I could just flip back to your honor's question regarding the standard of review, I think that's where the plain error bit comes in with regard to the inclusion of the word advertising in the reading of the statute. I think that's plain error review. I think that that was an error during the jury charge, which went unnoticed, which on this court's review for plain error, I don't know if it was plain, nobody caught it. It was error, yes. But then the harm, so that's what your honor was getting to. Were there other ways or were there other possibilities for how this jury reached the verdict? It did absolutely. And this jury was paying attention. This jury didn't convict on every count. This jury did have some acquittals in there. They did have a- Including at least one where there was advertising, right? One of the acquittals. Well, they were all, I mean, they were all advertising, yes. They all were involved. Okay. But they were all harboring, enticing, recruiting, all transporting, all those other things as well, your honor. So I think, so with regard to the second point, then if I could, unless there's further questions on the first, the speedy trial problem that the opponent has raised, I think the court's seen it that this case is unique. This case is unusual. This isn't a case where just anybody could step in and try the case. Even before Mr. Caruso made his point, the phrase, the government is always ready, popped into my head as well. I mean, and I'm sure the assistants in your office have said the same thing. I mean, why doesn't that carry some weight here? Well, that's true though. If the judge had said, government, you're trying the case, we would have tried the case. I mean, that's not evidence that there was a speedy trial violation here. If the judge had said in May, we're trying this case tomorrow, or we're trying this case the day that judge, that I'm sorry, Mr. Green comes back from his vacation in June or July, I just forgot. But if we were trying the case, then the government would have tried the case. But the fact that the judge chose as he did was not an abuse of discretion. The fact that the and as Judge Bianco noted, the statute doesn't differentiate between government counsel or large firms or any such other situation. It did appear, Ms. Richards, from the record that the judge, you can correct me if I'm wrong, but when I read the transcript, it seemed like the judge had made this conclusion sort of immediately that the government didn't make the argument that she's uniquely positioned. She's known the case from day one. She's you pointed out in your brief that she may have met with the victims early on, but the record wasn't clear that the government was suggesting and you just actually suggested otherwise, the government could have tried it. So you want to respond? No, I'm sorry. I didn't mean to do that. I was only countering the argument. If the judge had said you go, I understand. I'm not saying that was a concession, but with regard to the other bit, the government was ready to try the case and had not just met with these victims respectfully, prepped the case twice for trial previously, the fall before. The government had prepped the case twice for trial and then had to tell these victims in this unique case with these specific facts and this horrible stuff that happened to them. No, there was no discussion that Mr. Caruso says that the judge should have asked Mr. Gerstein, are you capable of trying this case? Do you have the same familiarity with it? There could have been more of an inquiry, I guess is the point. I can't say anything than other what's in black and white on the record, your honors. I can't add anything to the record that your honors, I can't. So I won't. But I think that what we do have is a record that was entirely clear that we had minor vulnerable victims who'd prepped the case twice only to be told, nope, he doesn't want to go yet. No, he doesn't want to go yet. And whether or not what my view of it is, is fair, what the court's view of it should be needs to take into account that entire prior process. And I think the court's already alluded to that. So it's your point that that prior history, including the prepping of the victims would have been something known to the, in the back of the district court's mind. He doesn't, he doesn't articulate much, but he was familiar with the record of the case. Do we know the district court knew about these, the earlier history of the case? Yes. Same judge was on the case throughout the entire proceedings. Yes. Had heard. And actually on the record, there is some point in the, I believe it's in my opponent's appendix, talking about the judge's just sort of disingenuous belief of whether or not he was inclined to proceed straight away to trial, because it did only come up when the government's was unavailable. It hadn't come up earlier. So I think that that also plays into the whole process and prior procedure of the case. And if there's any further questions, I'm happy to rest right now with one second left. Thank you. We'll hear rebuttal. Yes. Thank you, your honor. I will begin with the point that both judge beyond, well, certainly judge Bianco made and judge Livingston regarding the procedural aspect of the Speedy Trial Act point. The judge did not make sufficient inquiry. You've already noted that he hadn't asked Mr. Gesturing, the second chair, whether he could have tried the case. But beyond that, the statute requires that the district court make findings regarding the ends of justice being served and then set forth quote, reasons for its findings. That judge Larimer didn't do that. He stated conclusions. Conclusions are not findings and conclusions are certainly not reasons. And with respect to something that judge Livingston said that judge Larimer may have had something in the back of his mind. I'm going to suggest to your honors that that doesn't count, because as I cited cases from the Third Circuit and the Ninth Circuit, which say that on review, the court will not attribute to the district court reasons and findings that he did not make even if he could have made them. Let me turn briefly to the other point. Reading the statute that included advertising and then telling the jury that that was one of the alternative ways that the statute could be violated, I think is really telling and puts this over the top. Judge Livingston noted that that relieved the jury of their duty to focus on the statutes, the elements that that were in the statute. And I agree with that. And the fact that counsel said there were a number of verbs. Yes, there are a number of verbs. But the whole point is that one of the missing verbs advertising probably could have formed the basis for the conviction here. This was not, not, I repeat, an overwhelming case. Nine counts, the jury deliberated for two days. It acquitted on one count. It failed to reach a verdict on another count despite an Allen charge. Sorry, failed to reach a verdict on three counts despite an Allen charge. This was not an overwhelming case. The government concedes that there was error. As Judge Chin pointed out on the constructive amendment point, that gets me a long way home because error here is, per se, I don't have to show any prejudice under the plain error standard. And I suggest, Your Honors, that the government said that the jury had before it the core of criminality. That's not the point. The point is that the jury had before it proof, argument, and judicial imprimatur that broadened the basis for the conviction or possible conviction. Let me finish with two last points. I suggest that reading from the statute actually is worse than giving the detailed elements. I've had cases in this court where I said, look, the judge, he was wrong with respect to the elements. And the appellate judges say, yeah, but he read the statute. They read the statute. That trumps it all. Well, the reverse is true as well. I think reading the statute here trumps the specifics of the jury trial. And finally, I will close with a suggestion, perhaps a little unusual, because I think most lawyers want to tell Your Honors that I'm right across the board on everything. But let me suggest to you what I regard as the correct and the just way to dispose of this case. The court should reverse on the Speedy Trial Act point, because that is just outside the realm of permissible decisions. And if it reverses on the Speedy Trial Act point, then the overwhelming likelihood is that there will be a retrial. And at the retrial, everybody can be very careful about the advertising evidence, and all of my contentions of error would become moot. Thank you. Thank you, Mr. Caruso. Thank you both. Ms. Richards, well argued. Appreciate the argument. And we will take the matter under advisement. Thank you very much.